IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| FRANK BLANCHARD, MERSINI BLANCHARD, MALAKOFF PROPERTIES, LLC, RONNY SNOW, ANGELIA SNOW, TANYA BERRY, KIMBERLY RILEY, JOHN MILLER, AMY MILLER and CHAD MARTINEZ, EMILY MARTINEZ, <br><br> Plaintiffs, <br><br> v. <br><br> STEVE HUYNH, YVONNE HUYNH, HUYNH POULTRY FARM, LLC, T & N POULTRY FARM, LLC, THINH BAO NGUYEN, TIMMY HUYNH POULTRY FARM, TIMMY HYUNH and SANDERSON FARMS, INC., <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 6:18-CV-00265-RWS |

**ORDER**

Before the Court are three motions requesting that this case be remanded to the Texas state court: (1) Plaintiffs Frank Blanchard, Mersini Blanchard and Malakoff Properties, LLC's (collectively, the "Blanchard Plaintiffs") Motion for Leave to File Third Amended Complaint, Application for Preliminary and Permanent Injunction (Docket No. 11); (2) the Blanchard Plaintiffs' Motion to Remand (Docket No. 13); and (3) Plaintiffs Ronny Snow, Angelia Snow, Tanya Berry, Kimberly Riley, John Miller, Amy Miller, Chad Martinez and Emily Martinez's (collectively, the "Snow Plaintiffs") Motion to Remand, and Joinder in the Blanchard Plaintiffs' Motion to Remand (Docket No. 14). For the reasons set forth below, the Court **GRANTS** all three motions and **REMANDS** the case back to 392nd Judicial District Court of Henderson County, Texas.

**I.      Background**

Defendants are three poultry farms in Henderson County, Texas, and their owners and operators.[1]  *See* Docket No. 3 ¶¶ 10–19.  Plaintiffs are property owners who own land adjacent to the farms.  *Id.* ¶¶ 26, Docket No. 5 ¶ 5.1.  According to Plaintiffs, Defendants' poultry farms became a nuisance in late-2016 and early-2017.  *See* Docket No. 3 ¶¶ 32–39.  Around the same time, the poultry farms received a notice of violation related to the odors resulting from their operations.  *Id.* ¶ 32–33.  Plaintiffs allege the farms continue to spread foul smells and noises onto Plaintiffs' properties.  *See id.* ¶ 27; Docket No. 7 ¶ 5.3–5.8.  This common law nuisance claim is the heart of this action.

The case commenced in Texas state court on May 30, 2017, when the Snow Plaintiffs filed their original petition in the 173rd Judicial District Court of Henderson County, Texas.  Docket No. 1 ¶¶ 1–2; Docket No. 3 (Snow Complaint).  The next day, the Blanchard Plaintiffs filed their suit against Defendants in the 392nd District Court of Henderson County, Texas.  Docket No. 1 ¶ 2.  On August 3, 2017, the 392nd District Court consolidated the cases into a single action.  *Id.* ¶ 3; Docket No. 1-3 at 88.  For the next 10 months, the case proceeded through discovery.  Docket No. 1 ¶ 6.

On June 1, 2018, the Blanchard Plaintiffs filed their Second Amended Original Petition (Docket No. 7) (the "Second Amended Complaint").  Docket No. 1 ¶ 7.  In it, the Blanchard Plaintiffs added allegations that Defendants' farms exist by a fraudulent business model that exploits certain provisions of the Farm Bill of 2014, Pub. L. No. 113-79, 128 Stat. 649 (2014)

---

[1] The parties dispute Sanderson Farms' role in the operation of the farms.  This dispute is immaterial to these motions.

("Farm Bill").[2]  Docket No. 7 ¶¶ 5.2–5.3; 6.1; 7.2.  The relevant provision of the Farm Bill provides for government loans to help low net worth minorities open or operate a farm.  *Id.* ¶ 5.2.  Defendant Sanderson Farms, Inc. allegedly seeks out minorities with little or no farming experience to apply for government loans under the Farm Bill.  *Id.*  Here, the Blanchard Plaintiffs allege Sanderson recruited the Huynh and Nguyen defendants.  *Id.* ¶ 5.3.  According to the Blanchard Plaintiffs, neither family qualifies for benefits under the Farm Bill because both families are wealthy, and allegedly, the Defendants lied or made misrepresentations on documents submitted to the United States Department of Agriculture (the "USDA") to wrongfully obtain Farm Bill loans.  *See id.* ¶¶ 5.2–5.3, 6.1, 7.2, 8.3.

Defendants relied on the above allegations in the Second Amended Complaint to remove the case to this Court on June 8, 2018.  Docket No. 1 ¶ 9.  On July 6, 2018, the Blanchard Plaintiffs moved to amend their complaint and sought to eliminate the Farm Bill and USDA contentions.  *See* Docket Nos. 11, 12 (the "Third Amended Complaint").  On the same day, both groups of plaintiffs filed separate motions to remand the case back to state court.  *See* Docket Nos. 13, 14.

Plaintiffs put forth two theories in support of these motions.  First, Plaintiffs argue that remand is necessary because this Court never had subject matter jurisdiction.  *See* Docket No. 13 at 7–12; Docket No. 14 at 6.  According to Plaintiffs, the Second Amended Complaint did not assert a federal cause of action or otherwise create a federal question.  *Id.*  Second, Plaintiffs argue that, even if a federal question did exist in the Second Amended Complaint, the Blanchard Plaintiffs' Third Amended Complaint removed those causes.  *See* Docket No. 13 at 12–14; Docket

---

[2] The Second Amended Complaint does not identify a public law number or statute for the Farm Bill.  However, the Blanchard Plaintiffs' motion to remand and Defendants' opposition both agree that the herein cited version of the Farm Bill is the relevant bill.  Docket No. 13 at 3; Docket No. 15 at 1.

No. 14 at 7–8. Thus, Plaintiffs ask the Court to decline to exercise supplemental jurisdiction over the remaining claims and remand the case. *Id.*

As Plaintiffs seek to remand this case, Defendants bear the burden to establish that jurisdiction is proper. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998). For their part, Defendants argue that the Second Amended Complaint did create a federal question—either by raising federal causes of action or because determination of the claims "necessarily depends on the resolution of a substantial federal question." Docket No. 15 at 14. Defendants also argue that, if the Blanchard Plaintiffs are allowed to amend their complaint, the Court should still retain the case under supplemental jurisdiction. *Id.* at 22–23.

## II. <u>Federal Question</u>

The threshold issue is whether the Second Amended Complaint created a federal question. Federal courts are courts of limited jurisdiction, having the power to hear only cases that present a federal question or are between citizens of different states. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). Because Plaintiffs and most Defendants are all Texas domiciliaries, removal jurisdiction must be based on a federal question. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

The Blanchard Plaintiffs' federal question must appear on the face of their well-pleaded complaint. *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008). A plaintiff need not specifically cite a federal provision, *Johnson v. City of Shelby*, 135 S.Ct. 346, 346–47 (2014) (per curiam), but they must allege facts sufficient to establish a colorable issue of federal law, *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 391–92 (1987). "[T]he plaintiff is the master of the claim," so the Blanchard Plaintiffs may confine their arguments to those arising under state law even if federal claims are available. *Id.* at 392. If they so choose, there is no basis for federal jurisdiction. *Id.*

The Blanchard Plaintiffs set out five "counts" in the Second Amended Complaint:

1) "Common Law Fraud, Fraud in Real Estate Contract, and Intentionally Created Nuisance 'But' For Fraud;"

2) "Negligence and Negligently Created Nuisance (an Intentionally Created Nuisance);"

3) "Trespass;"

4) "Intentional Interference with Property and Property Rights;" and

5) "Nuisance & Nuisance *Per se*;"

Docket No. 7 at 9–12. The Second Amended Complaint also includes three sections specifying the Blanchard Plaintiffs' requested relief:

1) "Application for Temporary and Permanent Injunction;"

2) "Actual Damages, Special Damages, Attorney's Fees, Expert Fees, Punitive Damages, & Malice/Fraud;" and

3) "Securing the Execution of Documents by Deception & Conspiracy to Execute Documents by Deception Tex. Pen. Code. Ann. § 32.46 (Vernon 2014)."

Docket No. 7 at 13–15. Though each count and request for relief references a state cause of action, Defendants correctly point out that much of the Second Amended Complaint alleges "fraud on" the federal government. *See* Docket No. 7 ¶¶ 5.2–5.3, 6.1, 7.2, 8.3. Specifically, Defendants contend that: (1) ¶¶ 6.1 and 7.2 combine to seek an injunction of the USDA under taxpayer standing; (2) ¶¶ 5.3–5.5, 6.1, and 9.1 invoke a *qui tam* claim; and (3) that the fraud claims explained in ¶¶ 5.3, 6.1, 7.2, and 9.1 necessarily depend on a federal question. Docket No. 15 at 11–16.

The Court addresses each alleged basis for federal question jurisdiction in turn.

### a. Taxpayer Standing to Enjoin the USDA.

Defendants argue that the allegations in ¶¶ 6.1 and 7.2 plead a taxpayer standing claim. Docket No. 15 at 11–12 & n.6. Paragraph 6.1 primarily alleges Defendants' fraud on the State of Texas. It includes one, long sentence alleging fraud on the federal government:

> Plaintiffs, moreover, have both direct standing and taxpayer standing to complain about the fraud on the government with the fraudulent grants and plaintiffs seek injunctive relief to prohibit these payments from being made—and a return of these payments to the U.S. Department of Agriculture to pay for subsidies for veterans and specially disadvantaged minorities, who actually need and are deserving of those funds.

Docket No. 7 ¶ 6.1. Paragraph 7.2 follows a paragraph requesting injunctive relief and is also directed to taxpayer standing:

> Plaintiffs also invoke their taxpayer standing to enjoin further payments made by the United States Department of Agriculture to Defendants because these subsidies are predicated upon a fraud and are illegal expenditures that should be returned to the federal government to be used by veterans and especially disadvantaged minorities, who are truly deserving of those funds.

*Id.* ¶ 7.2. However, Defendants fail to establish that these allegations create a valid federal question.

"The constitutional requirements for federal-court jurisdiction—including the standing requirements and Article III—'are an essential ingredient of separation and equilibration of powers.'" *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 611 (2007) (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 101 (1998)). "Th[e] triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co.*, 523 U.S. at 103–104. "The absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case." *Id.* at 89 (emphasis in original). "Dismissal for lack of subject-matter

jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.' " *Id.* (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)).

"It has long been established[] that the payment of taxes is generally not enough to establish standing to challenge an action taken by the Federal Government." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 593 (2007). The Supreme Court only recognizes a single narrow exception to this general rule: "taxpayers must show (1) a 'logical link' between the plaintiff's taxpayer status 'and the type of legislative enactment attacked,' and (2) 'a nexus' between such taxpayer status and 'the precise nature of the constitutional infringement alleged.' " *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 126, (2011) (quoting *Flast v. Cohen*, 392 U.S. 83, 102 (1968)).

Defendants did not address the above enumerated jurisdictional requirements for taxpayer standing. Even as to the request for injunctive relief, Defendants do not explain how the Second Amended Complaint met Article III's case-or-controversy requirement or established the Blanchard Plaintiffs' standing to enjoin a non-party.[3] *See Steel Co.*, 523 U.S. at 102–4 (detailing the Supreme Court's standing jurisprudence). Nonetheless, a review of the complaint reveals that the Blanchard Plaintiffs did not allege a "constitutional infringement."[4] Though the Blanchard

---

[3] The USDA is not a party to this suit. Defendants cite cases recognizing "the basic legal principle that State courts are without jurisdiction to review the discretion or enjoin federal officers." Docket No. 15 at 11 (*citing State of Alabama v. Rogers*, 187 F. Supp. 848, 852 (M.D. Ala. 1960). But in these cases, the injunctions concerned parties to the litigation.

[4] Though a detailed analysis of the "logical link" element is unnecessary here, the Court does not find any plausible relationship between the Blanchard Plaintiffs, Texas land owners, and the relevant aspect of the Farm Bill, a fund to help impoverished veterans and minorities establish farms.

Plaintiffs allege that the dispersion of funds is fraudulent, they have not identified a Constitutional violation.

As the Blanchard Plaintiffs "lacked [taxpayer] standing to commence this action, [] their suit must be dismissed for want of jurisdiction." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 130 (2011) ("[T]he mere fact that a plaintiff is a taxpayer is not generally deemed sufficient to establish standing in federal court. To overcome that rule, respondents must rely on an exception created in *Flast* . . . ."). Thus, Defendants do not meet their burden to establish subject matter jurisdiction. *See Steel Co.*, 523 U.S. at 103–104 ("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.").

  **b.**  ***Qui Tam* Claims**

Defendants' second argument is that the Blanchard Plaintiffs pleaded a *qui tam* claim over which this Court has jurisdiction. However, Defendants conflate the generic "fraud on the USDA" allegations with the specific requirements of the False Claims Act (the "FCA"), which establishes the federal *qui tam* cause of action. *See* 31 U.S.C. § 3729, *et seq.*

As it could apply here, the federal government may pursue a false claim if the Defendants "knowingly make[d], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim" to the federal government. 31 U.S.C. § 3729. But an FCA violation does not automatically confer standing on a private person to pursue a claim. This power only exists under 31 U.S.C. § 3730, which provides specific limits on this standing:

> (1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.
>
> (2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not

>be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.
>
>. . . .
>
>(4) Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall—
>
>(A) proceed with the action, in which case the action shall be conducted by the Government; or
>
>(B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

Moreover, the plaintiff is the master of the complaint, and thus, it is the Blanchard Plaintiffs' prerogative to maintain only state causes of action, even if the alleged facts could support federal causes of action. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."); *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("Of course, the party who brings a suit is master to decide what law he will rely upon") (Holmes, J.); *see also Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced"); *Great North R. Co. v. Alexander*, 246 U.S. 276, 282 (1918) ("[T]he plaintiff may by the allegations of his complaint determine the status with respect to removability of a case").

Defendants fail to explain how the Blanchard Plaintiffs' complaint invokes § 3730, and a review of the complaint highlights numerous deficiencies. For example, the Blanchard Plaintiffs did not bring their complaint in the name of the government, and therefore, they do not have standing. 31 U.S.C. § 3730(b)(1) ("The action shall be brought in the name of the Government."); *cf. Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 n.4 (2000) (*Qui tam* relators have standing as partial assignees of the federal government's claim). None of the procedural

requirements of § 3730 were followed, and by failing to serve the complaint on the government, the Blanchard Plaintiffs cannot bring a *qui tam* claim. *See Tyson v. Wells Fargo Bank & Co.*, 78 F. Supp. 3d 360, 363 (D.D.C. 2015) ("Because Mr. Tyson has failed to follow the proper procedures for service and filing of an FCA case, this case must be dismissed."); *see also United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 999–1000 (2d Cir. 1995) (dismissing FCA case with prejudice because failure to follow FCA procedural requirements irreversibly frustrated the purpose of the statute); *Walsh v. JPMorgan Chase Bank N.A.*, 75 F. Supp. 3d 256, 262–63, No. 14-cv-774, 2014 WL 6808629, at *5 (D.D.C. Dec. 4, 2014) (dismissing FCA case due to failure to follow statutorily-mandated procedure). Because Defendants have not established the requirements under the FCA, they did not establish that any *qui tam* claim in the Second Amended Complaint was brought under federal law or raise a federal question.

      **c.**    **Whether the Second Amended Complaint Necessarily Raised a Federal Question**

Having established that Plaintiffs failed to invoke a federal cause of action, the Court turns to Defendants' final jurisdictional allegation that the Blanchard Plaintiffs' state fraud claim "necessarily depends on the resolution of a substantial federal question." Docket No. 15 at 14. According to Defendants, "whether the Blanchard Plaintiffs are entitled to their requested relief . . . necessarily raises the rights of Defendants and the United States government under a federal grant program" and invokes federal question jurisdiction. Docket No. 15 at 15. Defendants identify two contentions that "necessarily raise" federal questions: (1) that Defendants made false statements to the federal government in connection with applications for federal loans and subsidies and (2) that Defendants made false statements to the Texas Commission on Environmental Quality in connection with applications for farm permits. Docket No. 15 at 14–15.

To establish federal-question jurisdiction based on a federal-law issue embedded in a state-law claim, it must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). "When state law provides an alternative ground for recovery, the federal issue is not 'necessarily raised.' " *PlainsCapital Bank v. Rogers*, 715 F. App'x 325, 330 (5th Cir. 2017) (citing *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002) (holding that federal-question jurisdiction did not exist where complaint alleged "violation[s] of federal regulations as well as . . . violation[s] of state and local regulations"); *cf. Bd. of Comm'rs of Se. La. Flood Prot. Auth.—E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722–23 (5th Cir. 2017) (finding that federal issue was necessarily raised and distinguishing *MSOF* because of "[t]he absence of any state law grounding for" plaintiff's theory of negligence)). "Federal-question jurisdiction over state-law claims is by far the exception, not the rule." *Id.* at 328 (citing Richard H. Fallon, Jr. et al., *Hart and Wechsler's The Federal Courts and the Federal System* 836 (7th ed. 2015) ("In cases lacking a federal cause of action, the Supreme Court has clearly upheld jurisdiction under § 1331 in only four instances . . . . Even in the lower courts, rather few decisions uphold jurisdiction in such cases.")). Thus, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

Defendants primarily rely on *Harrison v. Christus St. Patrick Hospital* for support. Docket No. 15 at 15 (citing 432 F. Supp. 2d 648, 650 (W.D. La. 2006)). There, the plaintiff sought emergency medical care from Christus Hospital. *Harrison*, 432 F. Supp. 2d at 652. Christus

required the plaintiff to sign documents agreeing to repay any medical treatment she received. *Id.* She later discovered that Christus charged uninsured patients significantly more than insured patients. *Id.* Plaintiff brought two actions: the first in the United States District Court for the Middle District of Louisiana, and after that case was dismissed, a second in the 14th Judicial District Court for the Parish of Calcasieu in Louisiana. *Id.* at 653. Both complaints alleged similar facts, but the second complaint attempted to remove any bases for federal question jurisdiction. *Id.* This second action lead to the *Harrison* opinion. *Id.*

The operative *Harrison* complaint alleged five causes of action: "breach of contract, unjust enrichment, injunctive/declaratory relief, breach of fiduciary duty, and violations of Louisiana Unfair Trade Practices Act." *Id.* at 649. "Although the plaintiff originally filed her lawsuit in state court pleading state claims, federal law, specifically the defendant's federal rights and obligations [as a non-profit entity] under 26 U.S.C. § 501(c)(3), [was] an essential element underlying the plaintiff's claims." *Harrison* 432 F. Supp. 2d at 650. The court also noted that the complaint raised defendant's rights and obligations under Medicare and Medicaid. *Id.* In particular, (1) "the definition of the putative class in the complaint [was] not based upon being insured or uninsured, but it [was] based upon the Medicare reimbursement rate," and (2) the plaintiff's cause of action proposed "that Medicare and Medicaid prices should be extended to non-indigent and uninsured patients." *Id.* The plaintiff's complaint also complained "of improper emergency room screening and/or treatment based upon the plaintiff's ability to pay" which necessarily implicated the Federal Emergency Medical Treatment and Active Labor Act. *Id.* Because these federal laws and policies were central to the plaintiff's claims, federal question jurisdiction was proper. *Id.* at 651–52.

The present case does not pose the same central federal questions as *Harrison*. Rather, this case is akin to *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986). There, the plaintiff sought to recover under several common-law theories and one claim that the defendant's violation of the Federal Food, Drug, and Cosmetic Act (FDCA) was negligence per se. *Id.* at 805–6. Though "both parties agree[d] . . . that there is no federal cause of action for FDCA violations," *id.* at 810, the defendant removed the case to federal court and argued that the action was "founded in part, on an alleged claim arising under the laws of the United States." *Id.* at 806.

The Supreme Court noted "a long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* at 813. Instead, "the absence of a federal private right of action [is] evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." *Grable*, 545 U.S. at 318 (clarifying the earlier *Merrell Dow* holding). The broad risk of creating federal jurisdiction where the underlying claims were based in common law outweighed any benefit of hearing these claims in federal court:

> . . . *Merrell Dow* thought it improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law "solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence] . . . under state law." In this situation, no welcome mat meant keep out.

*Grable*, 545 U.S. at 319 (citations removed). Under this analysis, "[t]he novelty of an FDCA issue [was] not sufficient to give it status as a federal cause of action; nor should it be sufficient to give a state-based FDCA claim status as a jurisdiction-triggering federal question." *Merrell Dow*, 478 U.S. at 817.

Here, as in *Merrell Dow*, the violation of a federal statute is an element of a common law claim, and the complaint raises several state law claims to which the federal statute is not relevant. *See* Docket No. 7 ¶¶ 6.1 (alleging common law fraud). Unlike *Harrison*, where the claims rested

purely on the federally created duties, the Blanchard Plaintiffs' fraud claims are also supported by allegations of fraud on the State of Texas. *Id.* Allowing these types of claims to establish federal question jurisdiction "would [] attract[] a horde of original filings and removal cases raising other state claims with embedded federal issues." *See Grable*, 545 U.S. at 318. Accordingly, the combined state law duties and lack of a federal cause of action under the Farm Bill leads to the same result as in *Merrell Dow*: the claims do not necessarily raise a federal question, and there is no federal question jurisdiction. *See Grable*, 545 U.S. at 318 ("[In *Merrell Dow*] the combination of no federal cause of action and no preemption of state remedies for misbranding [was] an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331.").

For these reasons, Defendants have not established that the Second Amended Complaint "necessarily depends on the resolution of a substantial federal question," and jurisdiction is not proper before this Court.

### III. <u>Supplemental Jurisdiction</u>

Having found that federal jurisdiction is not proper, this Court need not reach the issue of supplemental jurisdiction. However, even assuming the Second Amended Complaint implicated federal question jurisdiction, the Court finds Defendants' supplemental jurisdiction argument unpersuasive.

#### a. **The Blanchard Plaintiffs' Motion for Leave to Amend**

On the same day they filed their motion to remand, the Blanchard Plaintiffs moved for leave to file a Third Amended Complaint. *See* Docket No. 11. This complaint eliminated the allegations that caused Defendants to remove the case in the first place. Defendants objected on two primary grounds: (1) the Blanchard Plaintiffs should not be granted leave to amend and (2)

even if the Blanchard Plaintiffs are permitted to amend their complaint, the Court should still exercise supplemental jurisdiction.  *See* Docket No. 17.  The Court address each of these in turn.

Defendants' first argument concerns whether the Court can allow the Blanchard Plaintiffs to amend their complaint at all.  Defendants argue that under *16 Front Street, L.L.C. v. Mississippi Silicon, L.L.C.* amendments seeking to remove federal jurisdiction are barred.  Docket No. 17 at 4–5; Docket No. 15 at 17, 19–20 (citing 886 F.3d 549 (5th Cir. 2018)).  Defendants reach this conclusion by focusing on the *16 Front Street* court's summary of the "time-of-filing" rule: " ' "a plaintiff cannot oust removal jurisdiction by voluntarily amending the complaint to drop all federal questions." ' "  Docket No. 17 at 5 (quoting *16 Front Street*, 886 F.3d at 558 (quoting *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir. 1985))).

The "time-of-filing rule" establishes that "[a] plaintiff's voluntary amendment to a complaint after removal to eliminate the federal claim upon which removal was based will not defeat federal jurisdiction."  *Boelens*, 759 F.2d at 507; *see also Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 592 (5th Cir. 2015) ("In a jurisdictional inquiry, we look at the complaint as it existed at the time the petition for removal was filed, regardless of any subsequent amendments to the complaint.").  But nothing in this rule bars amendments to the complaint.  Rather, it acknowledges a district court's discretion to keep or remand a case once federal claims disappear, through amendments or otherwise.  *See Spear Mktg.*, 791 F.3d at 593 (noting that a court may, "in its discretion, remand the case when the federal claims disappear as the case progresses").  The grant or denial of leave to amend a complaint is always left to the discretion of the district court.  *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000) (summarizing the Fifth Circuit's jurisprudence for reviewing a district court's denial of leave to amend).

The *16 Front Street* opinion did not disturb this long-established precedent. There, the Fifth Circuit only looked to the "time-of-filing" rule to address the related but distinct issue of whether the lack of subject matter jurisdiction in federal courts can be cured by an amended complaint. 886 F.3d at 554. Nothing in *16 Front Street* changes the time-of-filing rule or removes a court's discretion to grant leave to amend a complaint. *See id.* at 560–61 (finishing its analysis of the time-of-filing rule and concluding that "the district court should not have dismissed the claims [] based on the time-of-filing rule").

"In the context of motions to amend pleadings, 'discretion' may be misleading, because FED. R. CIV. P. 15(a) 'evinces a bias in favor of granting leave to amend.'" *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.,* 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). In light of this guidance, the Court allows parties to freely amend their pleadings, and this Court's standard docket control order sets a final amended pleading deadline well into the case. *See* Sample Docket Control Order *available at* http://www.txed.uscourts.gov/?q=judge/district-judge-robert-schroeder-iii (setting deadline to amend pleadings two weeks after the close of discovery and providing "[i]t is not necessary to file a Motion for Leave to Amend before the deadline"). The Court sees no compelling reason to depart from its established practice now.[5,6] Accordingly, the Court **GRANTS** the Blanchard Plaintiffs' motion to amend their complaint (Docket No. 11).

---

[5] While Defendants offer several cases, most of which pre-date *Spear Marketing*, describing amendments to remove federal claims as futile, that approach is not necessary here. *Spear Marketing* is clear that removing the claims does not destroy otherwise proper federal jurisdiction, but an amendment does allow the Court to remand any remaining state law claims in its discretion. 791 F.3d at 593. Here, the federal issues are a subset of the true dispute, a state nuisance case, and there is no compelling reason to require the Blanchard Plaintiffs to maintain these collateral Farm Bill assertions if they choose not to.

[6] The Blanchard Plaintiffs guarantee that the "federal" claims will not be in the case by the time of trial. *See* Docket No. 18 at 6 ("The filing of this Amended Complaint is a matter of when—not if.").

### b. The Court's Discretion to Retain the Remaining State Law Claims

Once the federal claims no longer exist, the operative question is "whether the district court should, in its discretion, remand the case when the federal claims disappear as the case progresses." *Spear Mktg.*, 791 F.3d at 593; *see also Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 528 (5th Cir. 2009) (citing *Henry v. Indep. Am. Sav. Ass'n*, 857 F.2d 995, 998 (5th Cir.1988) ("Once the case is removed, a plaintiff's voluntary amendment to a complaint will not *necessarily* defeat federal jurisdiction; it is within the district court's discretion whether to remand the action to state court." (emphasis added)). "Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if it 'has dismissed all claims over which it has original jurisdiction.'" *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016) (quoting 28 U.S.C. § 1367(c)(3)). "[W]ide discretion is vested in the trial court to order a remand of state claims on the heels of a dismissal of federal claims." *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir.1999). "Whether a district court abuses its discretion after § 1367(c)(3) has been satisfied depends on 'common law factors of judicial economy, convenience, fairness, and comity.'" *Heggemeier*, 826 F.3d at 872 (quoting *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158–59 (5th Cir. 2011).). "And based on these factors, [the Fifth Circuit has] elucidated the general rule that 'a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial.'" *Id.* (quoting *Brookshire*, 554 F.3d at 602.).

As to the judicial economy factor, the Texas district court is very familiar with the case. The state court already held several hearings and ruled on several disputes, and the case was removed only five months before trial. Docket No. 14 at 2–4. In contrast, this Order is this Court's first substantive determination in the case. The Court has little familiarity with the merits of this case, and the case has not been set on a schedule. Thus, this factor weighs in favor of remand. *See Enochs*, 641 F.3d at 159–160.

Second, as in *Enochs*, "it is certainly more convenient for the case to have been heard in the Texas state court in [the originating] County, where all of the parties, witnesses, and evidence is located. Moreover, as the judicial economy factor suggests, remand [will not cause] any financial inconvenience to the parties because they w[ill] not have [] to duplicate any of their previous efforts or expenses." *See Enochs v. Lampasas Cnty.*, 641 F.3d 155, 160 (5th Cir. 2011).

"Third, it [i]s certainly fair to have had the purely Texas state law claims heard in Texas state court, and there is nothing to indicate that either party [will be] prejudiced by a remand to Texas state court." *Id.* Therefore, the second and third factors also favor remand.

Fourth and finally, the Fifth Circuit advises that "comity demands that the 'important interests of federalism and comity' be respected by federal courts, which are courts of limited jurisdiction and 'not as well equipped for determinations of state law as are state courts.' " *Id.* (quoting *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 588–89 (5th Cir.1992)). The Third Amended Complaint and the operative Snow Complaint do not raise any federal issues. But, they do implicate significant questions of state law, including misrepresentations to the Texas Commission on Environmental Quality, violations of the Texas Administrative Code, violations of the Texas Health and Safety Code and state property rights. *See* Docket No. 12 ¶¶ 26, 29, 31. The fourth factor also weighs in favor of remand.

In sum, all four factors favor remand. Even if jurisdiction were initially proper, because no federal claims are currently before the Court, and for the reasons discussed, the Court declines to retain supplemental jurisdiction over the state law claims now that any federal claims are not before the Court.

## IV. Waiver

In a final attempt to keep this case before this Court, Defendants argue that Plaintiffs waived their right to ask this Court to remand.

Waiver only applies to the procedural requirements for removal. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect *other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal under section 1446(a)." (emphasis added)). This is because failure to comply with the procedural requirements of remand is not jurisdictional. *See Harris v. Edward Hyman Co.*, 664 F.2d 943, 945 (5th Cir. 1981) ("We previously have recognized that strict compliance with the limitations period in the removal statute does not affect the jurisdiction of the district court and that failure to file the petition within the allotted time may be waived. . . . Similarly, we think that a party who delays in seeking a remand, or otherwise participates in the proceedings in the district court, also may be precluded from objecting to a defendant's untimely consent to a defective removal petition.") (quotation omitted) (citation omitted); *Weeks v. Fid. & Cas. Co. of N. Y.*, 218 F.2d 503, 504 (5th Cir. 1955) ("However, the time limitation prescribed by the removal statute within which a petition for removal may be filed is not jurisdictional, but is merely modal and formal, and failure to file the petition within the allotted time may be waived, or objection to such failure may be precluded by estoppel."). A party cannot waive a challenge to subject matter jurisdiction. *See, e.g.*, 28 U.S.C. § 1447(c); *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("Subject-matter jurisdiction can never be waived or forfeited.").

To the extent Defendants contend waiver applies to supplemental jurisdiction, the exercise of supplemental jurisdiction is discretionary and often raised after the time to challenge improper remand has passed. *See, e.g.*, *Enochs*, 641 F.2d at 157 (motion to remand filed two and a half months after removal, when plaintiffs removed the federal claims from its case). As previously explained, because the factors weigh in favor of remand, Defendants' waiver argument is of no effect.

## V.     Conclusion

For the foregoing reasons, the Blanchard Plaintiffs' Motion to Remand (Docket No. 13) and the Snow Plaintiffs' Motion to Remand (Docket No. 14) are **GRANTED**. The Blanchard Plaintiffs' Motion for Leave to File Third Amended Complaint (Docket No. 11) is **GRANTED**. The case is **REMANDED** to the 392nd Judicial District Court of Henderson County, Texas.

**SIGNED this 26th day of March, 2019.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE